# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARIO WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CIV-14-061-W |
| | ) | |
| CHAD MILLER, Warden, | ) | |
| CORRECTIONS CORPORATION | ) | |
| OF AMERICA; BRIGGS, Assistant | ) | |
| Warden; SELLERS, Health Serv. | ) | |
| Admin.; WEISSMAN, Prison | ) | |
| Doctor; BATTLES, Lieutenant; | ) | |
| FOX, Chaplain; | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, appearing pro se, has initiated the present action under 42 U.S.C. § 1983 alleging that he suffered constitutional violations while housed at Cimarron Correctional Facility (CCF).  Doc. 11.  Plaintiff's amended complaint also implicates the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et. seq.*, and Oklahoma state law and its constitution.  *Id.*  United States District Court Judge Lee West has referred this matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).  Prison officials filed the court-ordered Special Report, Doc. 28, and Defendants Miller, Corrections

Corporation of America (CCA), Sellers, Battles, and Fox filed a motion to dismiss. Doc. 29.[1] Plaintiff responded, Doc. 30, and the case is now at issue.

## I.    Plaintiff's claims.

Plaintiff's allegations are separated into three categories. In the first, Plaintiff alleges First Amendment and RLUIPA violations through: (1) a lack of access to the Qu'ran[2] during Ramadan (Defendants Briggs and Fox), (2) prison officials' failure to remove other Muslim inmates "caught dishonoring the Muslim fast" from Ramadan participation (Defendants Miller, Briggs, Battles, and Fox), and (3) the inability to attend Muslim group worship (Defendants Miller and Fox). Doc. 11, at 6-9, 33.[3] In a related argument, Plaintiff also claims that the lack of access to the Qu'ran during Ramadan violated the Equal Protection Clause (Defendant Fox). *Id.* at 9.

---

[1]    The U.S. Marshals Service was unable to successfully serve Defendants Weissman and Briggs on Plaintiff's behalf. Docs. 22, 23. The undersigned has ordered Plaintiff to show cause why the court should not dismiss these individuals without prejudice. Doc. 34.

    For continuity, the undersigned has elected to identify Defendants Weissman and Briggs in Plaintiff's claims addressed herein, but makes no recommendations regarding the disposition of the claims against these parties.

[2]    The undersigned elects to use Plaintiff's spelling when referring to the Qu'ran.

[3]    Unless otherwise indicated, *see infra* n.7, the undersigned's page citations refer to this Court's CM/ECF pagination.

In the second category, Plaintiff alleges Eighth Amendment violations through: (1) a lack of medical treatment for his broken fingers (Defendants Miller, Weissman, and Sellers), (2) denial of proper monitoring during a hunger strike (Defendants Miller, Weissman, and Sellers), (3) a lack of medical treatment for Plaintiff's wrist and knees (Defendants Miller, Weissman, and Sellers), (4) denial of outdoor recreation (Defendants Miller and Battles), and (5) a lack of personal winter coat (Defendants Miller and Battles). *Id.* at 10-15, 33-35.

In his third and final category, Plaintiff alleges a First Amendment violation through retaliation (Defendant Battles). *Id.* at 14-15, 34. Plaintiff alleges that in addition to violating the federal constitution and RLUIPA, the above conduct violated Oklahoma law and the Oklahoma constitution. *Id.* at 19-21.

Plaintiff names Defendant Battles in his individual capacity, and Defendants Miller, Sellers, and Fox in their individual and official capacities. *Id.* at 2-4. Plaintiff holds Defendant CCA liable for all the alleged violations. *Id.* at 16-21.

## II.    Construction of Defendants' motion.

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6) based in part on nonexhaustion of administrative remedies. To the extent Defendants cite

any document, they cite one exhibit, DOC Policy OP-090124. Doc. 29, at 8-9. Defendants ask the court not to convert their motion to one for summary judgment, arguing generally that "[r]eliance upon pleadings and administrative materials, such as grievance records and grievance policies, are allowable in determining a Motion to Dismiss." *Id.* at 5-6. In support, they rely on *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204 (10th Cir. 2003), *abrogated in part by Jones v. Bock*, 549 U.S. 199, 212-17 (2007). *Id.* The undersigned finds that Defendants read *Steele*'s present-day holding too broadly.

In *Steele*, the Tenth Circuit sided with those courts holding that it was the prisoner who bears the burden to allege and prove exhaustion *in the complaint*. *See* 355 F.3d at 1209 ("Because we believe that a prisoner must plead exhaustion in his complaint, we part company with the many circuits which have held that exhaustion is an affirmative defense to be raised and proven by a defendant."). The court held that the prisoner must either attach "a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." *Id.* at 1210.

With that in mind, the Tenth Circuit held that courts may consider the administrative materials attached to the complaint in ruling on a Rule

12(b)(6) motion to dismiss. *Id.* at 1212 (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) for the proposition that the "court may look to both the complaint itself and to any documents attached as exhibits to the complaint"). Alternatively, where the prisoner only described the administrative materials but did not attach them, the defendant could submit "an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.* The court cautioned that "[i]f the defendant files a motion to dismiss requiring consideration of *additional* factual material, the court should convert the motion to one for summary judgment . . . ." *Id.* (emphasis added).

Now, inmates need not submit or even describe the relevant administrative materials. *See Jones*, 549 U.S. at 212-17 (holding that nonexhaustion is in fact an affirmative defense, and that inmates need not specifically plead or demonstrate exhaustion in the complaint). So, for purposes of ruling on a motion to dismiss, courts are less likely to encounter situations where the prisoner has either attached the administrative documents or referenced them to an extent that a defendant can simply provide an authentic copy for consideration. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (noting that after *Jones* "[w]e believe that only in rare cases will a district court be able to conclude from

the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse.").

The present case is, for the most part, the exception. Plaintiff references several relevant policies and attaches many specific administrative documents. Doc. 11 *passim* & Exs. A-J. To the extent that Defendants rely on those same policies and documents, the undersigned agrees that no conversion to summary judgment is necessary. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (agreeing that in ruling on a 12(b)(6) motion, courts may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice" (citations and internal quotations omitted)). However, the court cannot rely on outside documents – or the absence of those documents – while ruling on Defendants' motion to dismiss.

As discussed below, the undersigned finds that several of Plaintiff's claims should survive the motion to dismiss. Rather than construing Defendants' motion to dismiss as one for summary judgment, risking their ability to further brief the issues,[4] the undersigned elects to disregard any

---

[4] In this Court, Defendants may file only one motion for summary judgment without leave of the court. LCvR 56.1(a).

evidence Defendants rely upon outside Plaintiff's amended complaint and attached exhibits.

## III.  Consideration of the motion to dismiss.

### A.  Standard of review.

In ruling on Defendants' 12(b)(6) motion to dismiss, the court "'must accept all the well-pleaded allegations of the [amended] complaint as true and must construe them in the light most favorable to . . . [P]laintiff.'" *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014) (citation omitted).  To survive dismissal, Plaintiff's amended "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility . . . ." *Id.* (internal quotation marks and citation omitted).

For Defendants' affirmative defense involving Plaintiff's failure to exhaust administrative remedies, Defendants bear the burden of proof.  *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

## B.    Defendants' exhaustion defense.

### 1.    The exhaustion requirement.

The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust all available administrative remedies before resorting to a § 1983 or RLUIPA action in federal court.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005) ("[A] prisoner may not sue under RLUIPA without first exhausting all available administrative remedies").  "There is no question that exhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation omitted); *see also Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) ("To exhaust

administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient."). Thus, "'[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim.'" *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citation omitted).

### 2. The administrative grievance procedures.

Although he was housed at CCF (a private prison) during the relevant time frame, Plaintiff was required to exhaust the Oklahoma Department of Correction's (ODOC) grievance procedures. Doc. 28, Ex. 1, at 3 (instructing that ODOC's grievance procedures are applicable to any offender "sentenced or assigned to any form of supervision, custody, or control by the [ODOC] at any prison facility");[5] *see also Burnett v. Jones*, 437 F. App'x 736, 741 (10th Cir. 2011) ("[A]ll parties agree that the grievance process at CCF is governed by Oklahoma regulations and CCF's contract with the ODOC. ODOC Policy OP-090124 governs the grievance process.").

To exhaust under ODOC's grievance policy, Plaintiff was first required to attempt informal resolution with a staff member. Doc. 28, Ex. 1, at 6-7. If that attempt was unsuccessful, Plaintiff could then file a request to staff

---

[5] Plaintiff repeatedly refers to this policy, but did not attach it to his amended complaint. The undersigned finds that he incorporated it by reference.

(RTS). *Id.* Ex. 1, at 7. And, if he remained dissatisfied, Plaintiff had the opportunity to file a grievance. *Id.* Ex. 1, at 8. Plaintiff could also bypass the first two steps, and proceed directly with an "emergency" grievance, if his issue was one "in which the complaint alleges irreparable harm or personal injury will occur and which the grievance process will be unable to address in a timely preventative manner." *Id.* Ex. 1, at 15. Finally, if Plaintiff remained dissatisfied with his grievance results, he could then appeal to the ODOC administrative review authority. *Id.* Ex. 1, at 12. Of course, "[a] prisoner is not required to appeal a favorable resolution of his grievance to exhaust administrative remedies." *Florence v. Berrios*, 212 F. App'x 772, 724 (10th Cir. 2006).

### 3. Prison officials' conduct in the grievance process.

Plaintiff's duty to exhaust administrative remedies only applies where administrative remedies are available. So, if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and [the] court will excuse the prisoner's failure to exhaust." *Little*, 607 F.3d at 1250. Likewise, if prison officials exceed their authority when they deny a grievance, it "render[s] . . . exhaustion unavailable." *Id.*

## 4. Defendants' argument that Plaintiff failed to exhaust various claims.

Based on nonexhaustion, Defendants seek dismissal of Plaintiff's claims involving: (1) the inability to attend Muslim group worship, (2) denial of access to the Qu'ran during Ramadan in violation of the Equal Protection Clause, (3) a lack of medical treatment for Plaintiff's broken fingers, (4) denial of proper monitoring during a hunger strike, (5) a lack of medical treatment for Plaintiff's wrist and knees, and (6) retaliation. Doc. 29, at 9-10, 13, 15-16.[6] Regarding Plaintiff's retaliation claim, the undersigned agrees with Defendants and recommends that the court dismiss the claim without prejudice. However, the court should overrule Defendants' motion for dismissal as it relates to Plaintiff's other claims.

### a. Plaintiff's claim involving his inability to attend Muslim group worship (Defendants Miller and Fox).

Plaintiff spoke with Defendant Fox in June and July of 2013 and inquired whether Plaintiff would be able to attend group worship. Doc. 11, at

---

[6] Defendants concede that Plaintiff exhausted his claims relating to the: (1) denial of outside recreation, (2) denial of a personal coat, (3) lack of a Qu'ran during Ramadan in violation of the First Amendment and RLUIPA, and (4) prison officials' failure to remove other Muslim inmates from Ramadan participation (described by Defendants as Plaintiff's claim that "other inmates were . . . provided meals during daylight hours during Ramadan. . . ."). Doc. 29, at 12-14, 16.

8. Defendant Fox informed Plaintiff that prison officials had "yet [to] decide[] on how they [would] proceed" at Plaintiff's "newly operated" unit, and that when a decision had been made, he would "let [Plaintiff] know." *Id.* On July 23, 2013, Defendant Fox informed Plaintiff that prison officials had decided not to allow "max Muslims" to attend group services, and that if Plaintiff would file a RTS, "he [would] put it in writing." *Id.* On a motion to dismiss review, the undersigned considers these facts true. *See supra* § III(A).

Plaintiff filed a RTS on July 24, 2013, and Defendant Fox responded on August 6, 2013. Doc. 11, Ex. F, at 1.[7] Two days later, Plaintiff filed grievance #13-150, noting that he had spoken with Defendant Fox in June and July and had filed a RTS on July 24, 2013. *Id.* Ex. F, at 2. Prison officials rejected the grievance: "In your grievance you state that you have sent a request to staff back in June 2013. This would indicate that your time is up from when you first became aware of the incident." *Id.* Ex. F, at 3. Plaintiff then filed a request to appeal out of time, attempting to clarify that Defendant Fox did not inform Plaintiff that he would be denied access to group worship until July 23, 2013. *Id.* Ex. F, at 4. Prison officials rejected Plaintiff's attempt to appeal out of time. *Id.* Ex. F, at 5.

---

[7] The undersigned elects to cite to Plaintiff's exhibits and exhibit page-numbers as he presented them to the court.

Defendants seek dismissal based on prison officials' grievance rejection, Doc. 29, at 13, but the undersigned declines to make such a recommendation. Plaintiff attempted informal resolution with Defendant Fox, who instructed Plaintiff to wait until officials had made a decision regarding group worship. When Plaintiff spoke to Defendant Fox in June 2013, he had no adverse decision to appeal. Indeed, in June 2013, Plaintiff could not have been aware of the "incident," i.e., Defendant Fox's July 23, 2013 statement that Plaintiff could not attend group worship. So, Plaintiff's grievance was not in fact "out of time" and prison officials improperly rejected it on that ground. Under such circumstances, the undersigned finds that prison officials' improper rejection of the grievance rendered Plaintiff's administrative remedies unavailable. *See, e.g.*, *Fisher v. Figueroa*, No. CIV-12-231-F, 2013 WL 676170, at *4 (W.D. Okla. Jan. 7, 2013) (unpublished report and recommendation) (finding that once prison officials mistakenly rejected the prisoner's grievance and effectively prohibited additional argument, "further administrative remedies became unavailable for purposes of the Prison Litigation Reform Act"), *adopted by* 2013 WL 675386 (W.D. Okla. Feb. 22, 2013) (unpublished order).

### b. Plaintiff's claim regarding the denial of access to the Qu'ran as it arises under the Equal Protection Clause (Defendant Fox).

According to Defendants, dismissal is warranted because "Plaintiff did not even initiate the administrative remedies process to exhaust a claim that he was being denied equal protection of the laws when inmates practicing other religions received religious literature and he did not receive a Qu['r]an." Doc. 29, at 18.[8]  The undersigned finds such an argument meritless on a motion to dismiss.

As discussed above, exhaustion of administrative remedies is an *affirmative defense.  See supra* § II.  Plaintiff had no duty to allege or provide evidence that he exhausted his equal protection claim, and the absence of such does not entitle Defendants to dismissal.  *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints.").

---

[8]  Plaintiff's claim arising under the Equal Protection Clause is distinct from the similar claim arising under the First Amendment and RLUIPA. Defendants concede that Plaintiff successfully exhausted the latter.  Doc. 29, at 12.

### c. Plaintiff's claim alleging a lack of medical treatment for his broken fingers (Defendants Miller, Weissman, and Sellers).

Defendants also challenge Plaintiff's exhaustion of his claim that prison officials denied medical treatment for his broken fingers. Doc. 29, at 9. The undersigned concludes that Defendants misconstrue Plaintiff's allegation.

Plaintiff explains that he arrived at CCF with swollen fingers on May 15, 2013. Doc. 11, at 10. Dr. Weissman examined Plaintiff's fingers on May 21, 2013, and recommended x-rays. *Id.* However, Plaintiff did not receive the x-rays on May 29, 2013, as he expected, but had to wait until June 6, 2013. *Id.* at 10, 12. Those x-rays revealed two broken fingers. *Id.* at 12. On July 15, 2013, an outside physician stated that Plaintiff's fingers would have to be "rebroken and cast," and that prison officials would have to make that decision. *Id.* at 12. According to Plaintiff, he is still waiting for medical treatment because prison officials "have yet to make a decision." *Id.*

Defendants appear to interpret Plaintiff's amended complaint as alleging denial and/or delay of diagnostic x-rays. To that end, Defendants argue that Plaintiff did not exhaust his administrative remedies because prison officials rejected his "emergency" grievance (seeking x-rays) as not an emergency. Doc. 29, at 9; Doc. 11, Ex. A, at 1-5. But the undersigned interprets Plaintiff's amended complaint as alleging a lack of medical

*treatment* for his broken fingers. *See* Doc. 11, at 12 (complaining that prison officials "have yet to make a decision" regarding how to proceed with medical treatment), 16 (alleging CCA is liable for prison officials decisions on "treatment for broken hands"), 17 (alleging various Defendants are liable "in not treating broken hands").

After x-rays confirmed that Plaintiff did in fact have broken fingers, he filed a request for medical treatment on June 7, 2013. *Id.* Ex. A, at 9. Then, on June 24, 2013, Plaintiff filed a RTS requesting an appointment to treat his broken fingers. *Id.* Ex. A, at 10. In response, prison officials informed Plaintiff that he "was scheduled to see the doctor to discuss [Plaintiff's] x-ray." *Id.* Plaintiff saw an outside physician in July 2013. Doc. 11, at 12. Having no adverse response to address in a grievance, Plaintiff had no duty to continue with the exhaustion process. *See Florence*, 212 F. App'x at 724 ("A prisoner is not required to appeal a favorable resolution of his grievance to exhaust administrative remedies."). Plaintiff does not explain in the amended complaint whether he attempted exhaustion when the actual medical *treatment* did not occur, but under *Jones*, it was not his responsibility to do so. So, the undersigned recommends that the court decline dismissal of this claim based on nonexhaustion of administrative remedies.

### d. Plaintiff's claim regarding prison officials' failure to monitor his hunger strike (Defendants Miller, Weissman, and Sellers).

Plaintiff alleges that Defendants Miller, Weissman, and Sellers failed to properly monitor his hunger strike in accordance with CCA policy 13-46. Doc. 11, at 11. According to Defendants, Plaintiff properly exhausted his claim "as regards [to] his request that the matter of his hunger strike be investigated," but that his exhaustion did not include "any Eighth Amendment claims associated with his purported 8-day hunger strike." Doc. 29, at 10-11. The undersigned disagrees with Defendants.

Plaintiff filed an "EMERGENCY" RTS on June 3, 2013, complaining that prison officials had accused him of eating while on a hunger strike and seeking medical observation. Doc. 11, Ex. B, at 1. After an unfavorable response, Plaintiff filed grievance #13-115 on June 10, 2013, specifically stating that "CCF Staff did not follow policy regarding hunger strikes by making several mistakes involving monitoring properly." *Id.* Ex. B, at 2. In his grievance, Plaintiff asked for an investigation. *Id.* Prison officials investigated, noted evidence that Plaintiff had eaten, and deemed the response as "Relief Granted." *Id.* Ex. B, at 3.

Prison officials *investigated* the claims that Plaintiff had eaten while on hunger strike, but they did not address Plaintiff's specific concerns about the

lack of *monitoring* per "CCA Hunger Strike 13-46." Doc. 11, at 11; *id*. Ex. B, at 3. Regardless, Plaintiff gave prison officials notice that he believed his hunger strike was being improperly monitored, and that is all that was required of him. *See Barnes v. Allred*, 482 F. App'x 308, 311 (10th Cir. 2012) ("'A grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally.'" (citation and internal brackets omitted)). Further, the notation "Relief Granted" effectively ended Plaintiff's exhaustion process. *See* Doc. 11, Ex. B, at 3; *Florence*, 212 F. App'x at 724. Indeed, prison officials rejected Plaintiff's grievance appeal because "**RELIEF** [had been] **GRANTED BY THE FACILITY HEAD**." Doc. 11, Ex. B, at 4.

Based on the foregoing, the undersigned finds that Plaintiff gave prison officials sufficient notice of his claim that his hunger strike was improperly monitored, and that he lacked any further available remedies when prison officials found that relief had been granted. The court should decline to dismiss this claim for nonexhaustion of administrative remedies.

e.   **Plaintiff's claim regarding a lack of medical treatment for his wrist and knees (Defendants Miller, Weissman, and Sellers).**

Plaintiff alleges that he has an outstanding recommendation for wrist surgery and knee therapy from an outside doctor, but prison officials refuse

to provide the medical treatment. Doc. 11, at 13-14. Defendants acknowledge that Plaintiff attempted to exhaust the issue, but they argue that his appeal was "returned unanswered" and thus exhaustion was not *proper*. Doc. 29, at 14-15. The undersigned finds that the prison official lacked the authority to reject the appeal on the ground listed, thwarting Plaintiff's efforts to exhaust.

Plaintiff filed a RTS on September 18, 2013, seeking outside medical treatment for his wrist and knees. Doc. 11, Ex. C, at 1. Unsatisfied with the response, on September 26, 2013, he filed grievance #13-194. *Id.* Ex. C, at 2. When the CCF reviewing authority rejected the grievance on the merits, Plaintiff appealed. *Id.* Ex. C, at 3-4. On November 13, 2013, the ODOC Medical Services Administrator rejected Plaintiff's appeal because Plaintiff had used his "initial for first name." *Id.* Ex. C, at 5.[9]

After careful review, the undersigned finds no requirement in ODOC OP-090124 that an inmate must sign a grievance appeal with his full first name. Doc. 28, Ex. 1. In fact, aside from requiring an inmate to use legible

---

[9]     The reviewing authority then noted that because Plaintiff had improperly completed his form "in accordance with policy, OP-090124," a "'Grievance Response from Reviewing Authority' was not completed on grievance #13-194." Doc. 11, Ex. C, at 5. It is the prison – not the inmate – that prepares a "Grievance Response from Reviewing Authority" form, and only when the administrative review authority requests it. Doc. 28, Ex. 1, at 14.

handwriting, the policy gives no direction on signature requirements. *Id.* Even more telling, Plaintiff signed *all* of his attached exhaustion documents as "M. Williams," and no other document was rejected on this ground. Doc. 11, Exs. A-J.

When the reviewing body exceeds its authority in rejecting a grievance appeal, it "render[s] that final step of exhaustion unavailable." *Little*, 607 F.3d at 1250; *see also Burnett*, 437 F. App'x at 743 (holding that reviewer lacked the authority to reject a grievance appeal for the reasons stated, and noting that such an action "rendered proper exhaustion unavailable"). That is what happened here, and the undersigned finds that Plaintiff exhausted all his "available" remedies regarding his claim that officials denied medical treatment for his wrist and knees.

### f. Plaintiff's claim involving retaliation (Defendant Battles).

Finally, Defendants argue that Plaintiff failed to properly exhaust his claim that Defendant Battles retaliated against him. Doc. 29, at 15-16. On this point, the undersigned agrees and recommends that the court dismiss the claim without prejudice.

On September 4, 2013, Plaintiff filed a RTS alleging that Defendant Battles had retaliated against him for filing a grievance. Doc. 11, Ex. G, at 1. Plaintiff did not receive a response, and on October 7, 2013, he filed a

grievance complaining about the lack of RTS response. *Id.* Ex. G, at 2. Prison officials responded on October 21, 2013, acknowledging the lack of response and stating that Plaintiff "should have an answer soon . . . ." *Id.* Ex. G, at 3. Plaintiff appealed when he found no response forthcoming, Doc. 30, at 7, and after an investigation, prison officials provided Plaintiff with a copy of the RTS response on November 13, 2013. Doc. 11, Ex. G, at 4. The RTS response is undated. *Id.* Plaintiff acknowledged that he received the response on November 19, 2013. *Id.*

According to Plaintiff, prison officials' failure to date the RTS response and to respond in a timely matter made the exhaustion process unavailable. Doc. 30, at 7. Had prison officials *never* responded, the undersigned might agree. *See, e.g., Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable[.]"). However, Plaintiff continued to have an available remedy because after receiving the RTS response on November 19, 2013, he could have filed a grievance. And, if prison officials rejected the grievance as untimely at the facility and administrative review authority levels, Plaintiff could have filed a "Request to Submit a Misconduct/Grievance Appeal Out of

Time," citing the lack of timely response and/or lack of date as reasons why he was not at fault in the untimely filing. Doc. 28, Ex. 1, at 18.

Even when the prison is at fault "for misplacing [a] grievance," an inmate has a duty to use every available step to correct the error. *Hoover v. West*, 93 F. App'x 177, 181 (10th Cir. 2004). So, when an inmate does not even *try* to complete the process, dismissal for lack of exhaustion is appropriate. *See id.*; *see also Jernigan*, 304 F.3d at 1032 ("An inmate who begins the grievance process but does not complete it is barred from pursuing a claim under the PLRA for failure to exhaust his administrative remedies.").

The undersigned finds that while prison officials may have failed to timely respond to his RTS, Plaintiff still had available remedies that he did not utilize. Accordingly, the court should dismiss this claim without prejudice. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." (citation omitted)).

### 5. Summary of exhaustion claims.

Defendants raise an affirmative defense in a motion to dismiss. Under the necessary standards, the undersigned recommends that the court overrule Defendants' motion on Plaintiff's claims involving: (1) the inability to attend Muslim group worship, (2) denial of access to the Qu'ran during

Ramadan in violation of the Equal Protection Clause, (3) a lack of medical treatment for Plaintiff's broken fingers, (4) denial of proper monitoring during a hunger strike, and (5) a lack of medical treatment for Plaintiff's wrist and knees. However, the undersigned finds that Defendants carried their burden of showing that Plaintiff failed to complete the exhaustion process on his retaliation claim. The court should therefore grant Defendants' motion to dismiss on that claim.

### C. Defendants' motion to dismiss Plaintiff's religious claims arising under § 1983 and RLUIPA.

Plaintiff raises several religious claims. These involve: (1) a lack of access to the Qu'ran during Ramadan (arising under the First Amendment, the Equal Protection Clause, and RLUIPA) (Defendants Briggs and Fox), (2) prison officials' failure to remove other Muslim inmates "caught dishonoring the Muslim fast" from Ramadan participation (arising under the First Amendment and RLUIPA) (Defendants Miller, Battles, Briggs, and Fox), and (3) the inability to attend Muslim group worship (arising under the First Amendment and RLUIPA) (Defendants Miller and Fox). Doc. 11, at 6-9.

Presumably because they argued nonexhaustion of administrative remedies, Defendants do not address the merits of Plaintiff's claims involving: (1) a lack of access to the Qu'ran during Ramadan as it implicates

the Equal Protection Clause, or (2) the inability to attend Muslim group worship. These claims will therefore survive Defendants' motion to dismiss.

Defendants do address Plaintiff's remaining religious claims arising under both the First Amendment and RLUIPA. Although frustrated that Defendants cite no authority to support their specific arguments,[10] the undersigned agrees that Plaintiff has failed to state a valid claim for relief under either the First Amendment or RLUIPA that: (1) prison officials are liable for his lack of access to the Qu'ran during Ramadan, and (2) prison officials' failure to remove other Muslim inmates from Ramadan participation violated Plaintiff's personal rights. The court should dismiss these claims.

### 1. Standards under the First Amendment and RLUIPA.

Prisons may not prohibit the free exercise of religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." (internal citations omitted)). To state a valid claim for relief under the First Amendment, Plaintiff must

---

[10] Under their subsection "Religious issues," Defendants cite one case, *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010), which sets out the RLUIPA standard. Doc. 29, at 22. However, Defendants provide no guidance on the First Amendment's application and, when referring to Plaintiff's specific claims, they offer no citations or authority to support their arguments. *Id.* at 21-22.

allege that Defendants "substantially burdened" his "sincerely held religious belief." *Holt v. Hobbs*, ___ U.S. ___ , No. 13-6827, 2015 WL 232143, at *6 (U.S. Jan. 20, 2015). This entails alleging "conscious or intentional interference with his free exercise rights." *Gallagher*, 587 F.3d at 1070 (quoting *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006)).

RLUIPA provides in part that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person −

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).[11] To state a valid claim for relief under RLUIPA, Plaintiff must allege: (1) that the prison's policy "implicates his religious exercise"; (2) "that the relevant exercise of religion is grounded in a sincerely held religious belief"; and (3) that the prison's policy "substantially burden[s] that exercise of religion." *Holt*, 2015 WL 232143, at *6.

---

[11]    RLUIPA applies to programs or activities receiving federal financial assistance. 42 U.S.C. § 2000cc-1(b)(1). Defendants, from a private prison, do not challenge the application of RLUIPA.

### 2. Plaintiff's claim involving a lack of access to the Qu'ran during Ramadan (Defendants Briggs and Fox).

Plaintiff does not allege that Defendant Fox intentionally interfered with his access to the Qu'ran. Instead, Plaintiff explains that he asked Defendant Fox about the Qu'ran, and Defendant Fox informed him that the religious text "[was] on order and should be [at the prison] by the start of Ramadan." Doc. 11, at 6. When Plaintiff asked again about the text, Defendant Fox informed him that he had contacted the Islamic Agencies asking them to provide Qu'rans to the prison, and that organization had not responded. *Id.*; *see also id.* Ex. D, at 1, 3.

Per ODOC policy, prison officials do not purchase religious texts but obtain them through donations. *See* ODOC OP-030112, § IX ("DOC may obtain, through donations, religious items for use by the offender population. The department will not use state funds to purchase religious items.").[12] Nor does the law require them to purchase such texts. *See Abdulhaseeb*, 600 F.3d at 1320 (holding that the district court correctly found that "RLUIPA

---

[12] Plaintiff referenced this policy in grievance #13-139, Doc. 11, Ex. D, at 2, and the undersigned takes judicial notice of it. *See Gist v. Anderson*, No. CIV-12-1208-HE, 2013 WL 6909470, at *1-2 (W.D. Okla. Dec. 30, 2013) (unpublished order) (noting that the court would take judicial notice of an ODOC prison policy because plaintiff had referenced the policy in his complaint and it was "a judicially noticeable public record" (citing *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010)).

requires governments to refrain from substantially burdening religion, not to affirmatively subsidize religion"); *see also Miller v. Scott*, No. 11-352-RAW-SPS, 2014 WL 934911, at *7 (E.D. Okla. Mar. 10, 2014) (unpublished order) ("Because prison officials may not actively promote religion, DOC cannot purchase religious artifacts for the inmates. This prohibition includes copies of the Bible or Quran.").

Taking Plaintiff's allegations as true, Defendant Fox attempted to obtain donated Qu'rans but was able to do so in time for Ramadan. Under such circumstances, the undersigned finds that Plaintiff's allegations, as they stand, fail to state a valid claim that Defendant Fox "conscious[ly] or intentional[ly] interfer[ed] with [Plaintiff's] free exercise rights" or placed a "substantial burden" on Plaintiff's ability to exercise his religious rights. *Gallagher*, 587 F.3d at 1070 (citation omitted); *Holt*, 2015 WL 232143, at *6. The court should therefore dismiss this allegation without prejudice.[13]

---

[13]    In *Abdulhaseeb*, the Tenth Circuit held that plaintiff had stated a valid claim for relief where prison officials had authorized plaintiff to purchase religious food but had not approved any vendors from which to make the purchase, thus leaving the inmate unable to obtain his religious food even if he had funds to pay for it. *See* 600 F.3d at 1317-18. In the same vein, Plaintiff may have a valid claim for relief if Defendant Fox's reliance on only one outside organization to provide the Qu'rans placed a substantial burden on Plaintiff's ability to receive the text. Because amendment could potentially cure the allegation, the undersigned recommends that it be dismissed without prejudice. *See Reynoldson v. Shillinger*, 907 F.2d 124, 126

### 3. Plaintiff's claim that prison officials' failure to remove other inmates from Ramadan violated his religious rights (Defendants Miller, Battles, Briggs and Fox).

Plaintiff explains that other Muslim inmates participating in Ramadan ate meals during fasting periods. Doc. 11, at 7. Plaintiff argues that these inmates were "dishonoring the Muslim fast," and that prison officials violated *his* religious rights when they failed to remove these inmates from Ramadan participation. *Id.* at 7-8. Plaintiff alleges that he was "force[d] to abandon the rituals of Ramadan." *Id.* at 8. The undersigned finds that Plaintiff's claim fails to state a valid claim of relief under either the First Amendment or RLUIPA.

As noted above, every inmate enjoys the right to exercise his or her own religious beliefs. Plaintiff does not allege that Defendants forced *him* to eat or otherwise interfered with *his* fast or the exercise of *his* Ramadan rituals. Instead, Plaintiff suggests that he has a constitutional right to have *other* inmates conform their religious beliefs to his tenets. The undersigned finds no authority to support Plaintiff's theory and concludes that he fails to state a

---

(10th Cir. 1990) (holding "district court erred in dismissing plaintiff's complaint with prejudice . . . in light of permissive standard accorded pro se prisoner pleadings"); *Arocho v. Lappin*, 461 F. App'x 714, 716 (10th Cir. 2012) ("[W]hile the complaint did not state a claim against defendant [], a dismissal without prejudice was appropriate to give plaintiff an opportunity to cure its deficiencies by amendment.").

claim that prison officials violated the First Amendment or RLUIPA when they allowed other Muslim inmates to choose whether to eat or fast during Ramadan. *See, e.g., Moore v. Atherton*, 28 F. App'x 803, 806 (10th Cir. 2001) (holding that a Muslim inmate failed to state a valid free exercise claim based on an allegation that he could not avoid overhearing Christian inmates pray, because he had not established that overhearing another religion's prayers "burden[ed] his own exercise of his religious beliefs"). The court should dismiss this claim with prejudice. *See Dillard v. Bank of N.Y.*, 476 F. App'x 690, 692 (10th Cir. 2012) ("Under these circumstances, the district court correctly dismissed the complaint with prejudice, particularly since nothing in the facts [plaintiff] did allege suggests that any amendment could have cured her pleading deficiencies.").

### 4. Summary of Plaintiff's § 1983 and RLUIPA claims.

The court should grant Defendants' motion to dismiss Plaintiff's First Amendment and RLUIPA claims that: (1) prison officials are liable for his lack of access to the Qu'ran during Ramadan, and (2) prison officials' failure to remove other Muslim inmates "caught dishonoring the Muslim fast" from Ramadan participation violated Plaintiff's personal rights.

Defendants do not address Plaintiff's claims involving: (1) a lack of access to the Qu'ran during Ramadan as it implicates the Equal Protection

29

Clause, or (2) the inability to attend Muslim group worship. These claims should therefore survive Defendants' motion to dismiss.

## D. Defendants' motion to dismiss Plaintiff's conditions of confinement claims.

Plaintiff exhausted two conditions of confinement claims, involving allegations that he was denied outdoor recreation and a personal winter coat. Doc. 11, at 14, 15; *see also* Doc. 29, at 14, 16 (conceding administrative exhaustion on these claims). Defendants seeks dismissal for failure to state a valid claim for relief. Doc. 29, at 19-20. Again, Defendants rely only on general citations for the standard in conditions of confinement cases and do not provide authority for their specific arguments. *Id.* at 20. Nevertheless, the undersigned agrees that Plaintiff has failed to state a valid claim on both allegations.

### 1. Standard for condition of confinement cases.

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, liability requires proof that the deprivation was "sufficiently serious" and resulted from "deliberate indifference" to an inmate's health. *Id.* at 834 (citation omitted).

### 2. Plaintiff's alleged lack of outside recreation (Defendants Miller and Battles).

Taking Plaintiff's allegations as true, Defendants Miller and Battles denied Plaintiff outside recreation on September 2nd, 3rd, and 6th, 2013. Doc. 11, at 9, 27. But the Tenth Circuit Court of Appeals has found no constitutional violation with much longer denials of outside recreation, and the undersigned thus recommends that the court dismiss this claim with prejudice. *See Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. 2008) (holding that a "deprivation of outdoor recreation [for one year] is not sufficiently serious to implicate the Eighth Amendment").

### 3. Plaintiff's alleged lack of a personal coat (Defendants Miller and Battles).

Initially, Plaintiff states that prison officials denied his request for a "personal coat" for outside recreation, and that he was forced to "attend outside recreation in freezing temperatures." Doc. 11, at 15. Elsewhere in the amended complaint, and in the attached grievances, Plaintiff makes his allegation clearer: prison officials did not deny Plaintiff access to *any* coat, they denied him a *personal* coat. *Id.* at 29 & Ex. I, at 1-5.

The Eighth Amendment requires that prison officials not expose inmates to inclement weather without proper clothing. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ("The Eighth Amendment's

prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including . . . clothing . . . ."); *Skelton v. Bruce*, 409 F. App'x 199, 208 (10th Cir. 2010) ("Exposure to inclement weather without proper clothing can meet the objective prong of an Eight Amendment violation . . . .").  But the undersigned finds no authority to suggest that the Eighth Amendment requires prison officials to provide Plaintiff with a *personal* coat.  Plaintiff acknowledges that prison officials gave him access to *a* coat when attending outside recreation, Doc. 11, at 29 & Ex. I, at 1, 4.  The undersigned therefore recommends that the court dismiss this claim with prejudice.[14]

### 4.    Summary of Plaintiff's conditions of confinement claims.

The court should grant Defendants' motion to dismiss Plaintiff's claims involving Defendants Miller and Battles' denial of outside recreation and a personal coat to Plaintiff.  These allegations fail to state a valid claim for relief, and dismissal should be with prejudice.

---

[14]    Although it is clear that Plaintiff found the available coats dirty and distasteful, Doc. 11, at 29, he focuses his amended complaint on the denial of a personal coat.  The undersigned does not construe the amended complaint as seeking relief based on the cleanliness, or lack thereof, of the group coats.

### E. Defendants' motion to dismiss CCA.

Defendants seek to have CCA dismissed from the federal claims. Doc. 29, at 20-21, 23. The undersigned recommends that the court overrule the motion in part, and grant it in part.

### 1. Standard for relief against a private corporation.

Because CCA is a private corporation, it "'cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)). And, CCA cannot incur liability based on its "contractual relationship with the [S]tate." *McMiller v. GEO Group, Inc.*, CIV-12-1060-W, 2014 WL 4929342, at *1, 3 (W.D. Okla. Sept. 30, 2014) (unpublished order). To hold CCA liable for its employees' alleged violations, Plaintiff must show "that CCA directly caused the constitutional violation by instituting an 'official . . . policy of some nature' that was the 'direct cause' or 'moving force' behind the constitutional violations." *Smedley*, 175 F. App'x at 946 (citations omitted). Such a policy or custom may take the form of:

> (1) "a formal regulation or policy statement"; (2) an informal custom "amounting to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these

policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations and internal brackets omitted).

## 2. Analysis.

The undersigned finds that Plaintiff has sufficiently alleged CCA's liability for Plaintiff's claims involving: (1) a lack of medical treatment for his broken fingers, (2) denial of proper monitoring during a hunger strike, and (3) a lack of medical treatment for his wrist and knees,

Plaintiff alleges that CCA failed to train and/or supervise Defendants. Doc. 11, at 16, 18. Defendants "encouraged, ratified or approved" the lack of medical care knowing "that such conduct was unjustified and would result in violations of constitutional rights, severe injury, and evidenced deliberate indifference to inmates health and safety." *Id*. Plaintiff also claims that Defendant Miller "is and was charged with the policy and ultimate decision making responsibilities at CCA's prison," and Defendants Miller and Sellers are CCA's "decision makers." *Id*. at 17-18. The undersigned accepts these allegations as true, and finds that Plaintiff states a plausible claim that CCA is liable for his alleged lack of medical treatment. *See Bryson*, 627 F.3d at 788 (noting that a plaintiff may state a valid claim for liability, through a

34

policy or custom, by alleging either that the policy or custom came from the: (1) "decisions of employees with final policymaking authority"; (2) "ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (3) "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused" (citation omitted)).

Conversely, the undersigned recommends that the court dismiss CCA from Plaintiff's claims involving a lack of access to the Qu'ran during Ramadan in violation of the Equal Protection Clause and the inability to attend Muslim group worship.[15]  For these claims, Plaintiff does not allege that Defendants Briggs, Battles, and Fox were final decision makers, and instead relies only on the Defendants' employment with CCA.  Doc. 11, at 19-20.  As illustrated above, CCA cannot be held liable under a respondeat superior theory.

---

[15]   Also, CCA cannot be held liable for any claim that the court otherwise dismisses.  *See Allen v. Zavaras*, 430 F. App'x 709, 712 (10th Cir. 2011) ("A private defendant such as the CCA, can be liable under § 1983, . . . but dismissal is appropriate where, as here, the plaintiff has failed to adequately allege an underlying constitutional violation by one of its employees.").

## IV. Recommendation and notice of right to object

(1) Plaintiff's retaliation claim (Defendant Battles) is unexhausted. Plaintiff has failed to state a valid claim for relief on his claims involving: (2) a lack of access to the Qu'ran during Ramadan (arising under the First Amendment and RLUIPA) (Defendants Briggs and Fox), (3) prison officials' failure to remove other Muslim inmates "caught dishonoring the Muslim fast" from Ramadan participation (Defendants Miller, Battles, Briggs, and Fox), (4) denial of outside recreation (Defendants Miller and Battles), and (5) denial of a personal winter coat (Defendants Miller and Battles).

For Plaintiff's claims involving (1) retaliation and (2) denial of access to the Qu'ran in violation of the First Amendment and RLUIPA, the court should dismiss *without* prejudice. For Plaintiff's claims involving: (3) prison officials' failure to remove other Muslim inmates "caught dishonoring the Muslim fast" from Ramadan participation, (4) denial of outside recreation, and (5) denial of a personal winter coat, the court should dismiss *with* prejudice.

Defendants do not address the merits of Plaintiff's claims involving: (1) a lack of access to the Qu'ran during Ramadan at it implicates the Equal Protection Clause (Defendant Fox), (2) the inability to attend Muslim group worship (Defendants Miller and Fox), (3) a lack of medical treatment for

Plaintiff's broken fingers (Defendants Miller, Weissman, and Sellers), (4) denial of proper monitoring during a hunger strike (Defendants Miller, Weissman, and Sellers), or (5) a lack of medical treatment for Plaintiff's wrist and knees (Defendants Miller, Weissman, and Sellers). These claims therefore survive Defendants' motion to dismiss. However, Defendant CCA is entitled to dismissal from Plaintiff's claims involving the lack of access to the Qu'ran under the Equal Protection Clause and the inability to attend Muslim group worship.

Finally, Defendants do not address the application of Oklahoma laws or the Oklahoma constitution, and Defendants Miller, Sellers, and Fox do not address their official capacity claims.

The undersigned advises the parties of their right to file an objection to the report and recommendation with the Clerk of this Court by the 16th day of February, 2015, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to the report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

The undersigned has given Plaintiff until March 7, 2015, in which to find and serve Defendants Weissman and Briggs.  Doc. 36.  So, this report and recommendation does not terminate the referral in the present case.

ENTERED this 27th day of January, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE