FILED

MAR 1 2 2015

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

MARIO WILLIAMS, )
)
      Plaintiff, )
)
vs. ) No. CIV-14-61-W
)
CHAD MILLER, Warden, et al., )
)
      Defendants. )

## ORDER

On January 27, 2015, United States Magistrate Judge Suzanne Mitchell issued a Report and Recommendation in this matter and made certain recommendations regarding the claims asserted by plaintiff Mario Williams, proceeding pro se, and the challenges to those claims filed by defendants Corrections Corporation of America ("CCA"), Chad Miller, Tommy Battles, Arthur Fox and Theresa Sellers. The parties were advised of their right to object, see Doc. 37 at 37, and the matter now comes before the Court on Williams' Motion to Object, see Doc. 38, and the defendants' Objection to Report and Recommendation. See Doc. 39.

Williams' claims in his amended complaint are grounded on events that occurred while he was incarcerated at Cimarron Correctional Facility ("CCF"), in Cushing, Oklahoma, pursuant to a contract between CCA, as owner and operator of CCF, and Oklahoma Department of Corrections ("DOC"). Miller is the facility's Warden, and Sellers is employed by CCF as Health Services Administrator. Fox is employed as CCF Chaplain, and Battles is a corrections officer.

Williams has sought relief under title 42, section 1983 of the United States Code and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et. seq. He has alleged that his rights under the first amendment to the United States Constitution and RLUIPA have been violated because Fox and nonmovant Briggs, CCF's Assistant Warden, denied him access to a Qu'ran during Ramadan, because Miller, Briggs, Battles and Fox failed to remove from Ramadan participation inmates who were "caught dishonoring the Muslim fast," Doc. 11 at 7, and "ridicul[ing] . . . Muslim traditions of fasting," id. at 8, and because Miller and Fox prevented his attendance at Muslim group worship. Williams has also alleged that he has been denied "equal treatment," id. at 9, because prison officials have failed in their "obligat[ion] to treat religions in an even handed manner." Id.

Williams has further alleged in his amended complaint that his rights under the cruel and unusual punishments clause of the eighth amendment to the United States Constitution have been violated because Miller, Sellers and nonmovant Mark Weissman, a CCF physician, denied him medical treatment for his broken fingers and for his wrist and knees and because they failed to properly monitor him during a hunger strike. Williams has also contended that Miller and Battles denied him outdoor recreation and failed to provide him a personal coat. Finally, Williams has contended that he was subjected to retaliation in violation of the first amendment because he (Williams) complained about the lack of "out-of-cell exercise." Id. at 15.

Williams has also sought relief under state law. In particular, he has alleged that "CCA is obligated by contract to . . . provide for the health and safety of the inmates in the custody of the State of Oklahoma who are housed at CCF," id. at 19, and that CCA has

"violated this duty of care," id., because "it failed to properly and adequately train, supervise and discipline prison staff regarding proper medical care and observation while on hunger strike . . . . ." Id. Williams has also sought relief under Sections 7 and 9 of Article II of the Oklahoma Constitution. See id. at 20.

In their Motion to Dismiss filed under Rule 12(b)(6), F.R.Civ.P., the defendants challenged both Williams' federal and state law claims.[1] Based upon Magistrate Judge Mitchell's findings and recommendations, the defendants in their Objection have challenged only her resolution of their arguments regarding exhaustion as to three of Williams' federal law claims. See Doc. 39. Williams in his Objection has only argued that Magistrate Judge Mitchell erred in connection with his claims based upon prison officials' failure to prohibit certain inmates from participating in Ramadan and their failure to provide him a personal coat. See Doc. 38. Accordingly, the Court has considered only whether Williams has exhausted his administrative remedies as to the three challenged claims and whether the allegations advanced in support of the two claims that are the subject of Williams' Objection are well-pleaded and plausibly give rise to an entitlement to relief. See Ashcraft v. Iqbal, 556 U.S. 662, 677 (2009).

The Prison Litigation Reform Act ("PLRA") of 1996 provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted.

---

[1] Although the defendants in their Motion to Dismiss stated that CCA was entitled to dismissal of Williams' state law claim to the extent it was grounded on breach of a contractual duty, see Doc. 29 at 22, Magistrate Judge Mitchell found that "[d]efendants [in their Motion to Dismiss] do not address the application of Oklahoma laws or the Oklahoma [C]onstitution . . . ." Doc. 37 at 37. Since this matter is being re-referred to Magistrate Judge Mitchell for further proceedings, she will have the opportunity to address the defendants' challenges to Williams' state law claims.

3

42 U.S.C. § 1997e(a).

DOC's Offender Grievance Process, as outlined in OP-090124, sets forth the procedure to be used by Oklahoma inmates, including those incarcerated at CCF, for exhausting administrative remedies. See Doc. 28-1. "Grievable [i]ssues" are those

> issues regarding conditions of confinement, actions of staff, and incidents occurring within or under the authority and control of DOC that have personally affected the offender making the complaint and for which a remedy may be allowed by [DOC] . . . or by law.

Id. at 4, Section II.A.1.

DOC's grievance policy requires an inmate to attempt to resolve any grievable issue through informal resolution "by talking with the affected staff, supervising employee or other appropriate staff within three days of the incident." Id. at 7, Section IV.B. If the matter is not resolved, the inmate "must submit a 'Request to Staff' . . . [that] "detail[s] the issue/incident completely but briefly." Id. Section IV.C.

If the inmate is not satisfied with the response to his Request to Staff, the inmate must "complete the 'Offender Grievance Report Form,'" id. at 8, Section V.A., and attach thereto "the 'Request to Staff' form used in the informal grievance process with the response." Id. at 8-9, Section V.A. If the inmate remains dissatisfied with the reviewing authority's response to his formal grievance, the inmate must appeal to DOC's Administrative Review Authority or Chief Medical Officer, whose decision is final. E.g., id. at 12-15, Section VII.

DOC policy dictates that if the inmate does not follow the instructions set forth in DOC's grievance process or on the grievance forms themselves, "the grievance may be returned unanswered for proper completion." Id. at 9, Section V.A.7.

4

DOC's Offender Grievance Process also permits emergency grievances, e.g., id. at 15, Section VIII, which are defined as

> one in which the complaint alleges irreparable harm or personal injury will occur and which the grievance process will be unable to address in a timely preventive manner.

Id. Section VIII.A.1. Such "[g]rievances may be submitted directly to the reviewing authority without informal resolution when . . . substantial risk of personal injury or other irreparable harm exists." Id. Section VIII.A.

In her Report and Recommendation, Magistrate Judge Mitchell for purposes of the instant Order first found that Williams had exhausted his claims regarding lack of medical treatment for his broken fingers, lack of proper monitoring during his hunger strike and lack of medical treatment for his wrist and knees. Accordingly, the Court has examined the record, to the extent permitted, to determine whether Williams has exhausted all available remedies as to these claims.

Williams has first alleged

(1) that he transferred to CCF on May 15, 2013, and that at the time of his arrival, he had swollen hands, e.g., Doc. 11 at 10;

(2) that after examination on May 21, 2013, Dr. Weissman reported that "he would set . . . [Williams] up for further x-rays on [May 29, 2013,]" id.;

(3) that he (Williams) did not receive the promised x-rays on May 29, 2013, because he "was told . . . that [Dr.] Weissman [had] change[d] his mind," id., and that he (Williams) instead had to wait until June 6, 2013, e.g., id. at 10, 12;

(4) that x-rays taken on June 6, 2013, revealed two broken fingers, e.g., id. at 12;

5

(5) that on July 15, 2013, he "was taken to an outside physician . . . at O.U. Medical Center where [he (Williams)] was told [that] because [he had] . . . not [been] brought sooner, the only way [his] . . . hands [could] . . . be fixed [was] . . . if they were rebroken and cast, which was the [facility's] decision . . . ," id.; and

(6) that at the time his amended complaint was filed on February 20, 2014, he was still waiting for medical treatment because prison officials "ha[d] yet to make a decision." Id.

After x-rays confirmed that he did in fact have two broken fingers, Williams filed a Request for Health Services on June 7, 2013. See Doc. 11-2 at 9. Thereafter, on June 24, 2013, he filed a Request to Staff reminding prison officials that he was to be scheduled for an examination "by an outside hand specialist for [his] . . . broken fingers," id. at 10, and he asked that an appointment be made.

In response, prison officials informed Williams on June 26, 2013, that he was "scheduled to see the doctor to discuss [his] . . . x-ray." Id. As he had requested, Williams saw an outside physician at O.U. Medical Center in July 2013. Because Williams received no adverse response to his Request to Staff about which to complain or to grieve in an Offender Grievance Report Form, the Court concurs with Magistrate Judge Mitchell's finding that Williams had no duty to continue with the DOC's Offender Grievance Process. See Florence v. Berrios, 212 Fed. Appx. 722, 725 (10th Cir. 2006)(prisoner not required to appeal favorable resolution of grievance to exhaust administrative remedies)(citation omitted)(cited pursuant to Tenth Cir. R. 32.1).

In his amended complaint, Williams has also alleged that he went "on a hunger strike in protest of denied medical treatment," Doc. 11 at 11, and he has contended that

"CCF staff left [him] . . . in [his] . . . cell without proper observation," id., contrary to CCA-CCF Policy 13-46, see Doc. 28-7, which "provide[s] guidelines and define[s] procedures for the identification and management of [CCF] patient inmates/residents on a hunger strike . . . ." Id. at 3.

Williams filed a Request to Staff dated June 3, 2013, that he labeled "EMERGENCY." Doc. 11-2 at 11. He complained that prison officials had falsely accused him of eating "several times," id., since he began his hunger strike on May 29, 2013, and he asked to have his weight, calorie intake and vital signs checked "for the truth." Id.

Prison officials responded that "documentation indicate[d] that [Williams] . . . did in fact take a lunch meal on June 4th," id., and "had commissary during . . . [his] alleged 'strike.'" Id. Prison officials further wrote: "This will be remedied immediately and proper hunger strike protocols will be implemented." Id.

Williams filed an Offender Grievance Report Form, Grievance No. 13-115, on June 10, 2013. See Doc. 11-2 at 12. He wrote that "CCF Staff did not follow policy regarding hunger strikes by making several mistakes involving monitoring properly." Id. He requested that an investigation "to the highest authority," id., be conducted; prison officials investigated, and the Grievance Response from Reviewing Authority read in part:

> This is in response to your grievance received on June 13, 2013, in which you want an investigation done on your hunger strike not being monitored properly.
>
> An investigation was done on your alleged hunger strike and found that you had taken a meal on June 4, 2013 and also commissary during the time of your alleged hunger strike.
>
> Relief Granted.

Id. at 13.

Again, the Court concurs with Magistrate Judge Mitchell's findings as to exhaustion of this claim. That prison officials deemed the grievance process ended by their statement "Relief Granted" excused Williams from further action.[2]

Williams has also alleged in his amended complaint that he was denied access to outside medical care, and in particular, denied recommended medical treatment from an "outside physician[ ] . . . to have surgery on . . . [his] wrist, rehab[ilitation] on both knees, and follow up visits." Doc. 11 at 13. Williams has claimed that "[i]t has been almost (2) years without any treatment." Id.

The defendants have acknowledged that Williams attempted to exhaust this issue in compliance with DOC grievance procedures, see Doc. 29 at 15, but have argued that Williams did not complete the process.

Williams filed a Request to Staff dated September 18, 2013, seeking treatment from an outside physician for his wrist and knees. See Doc. 11-2 at 19. Sellers responded by stating, "We will follow the recommendations of the last outside provider you saw." Id.

Unsatisfied with this response, Williams on September 26, 2013, filed an Offender Grievance Report Form, Grievance No. 13-194, see id. at 20, and wrote that Sellers had misconstrued what he was requesting. He asked that he be "[g]ranted . . . the recommendations of physician 'Travis Warford,' outside provider on [April 19, 2011] . . . ." Id. In response, Sellers in the Grievance Response from Reviewing Authority wrote:

---

[2]Mark Knutson, Director's Designee, rejected Williams' appeal and found that it was improperly filed since "relief [had been] granted by the facility head." Doc. 11-2 at 14 (emphasis deleted).

> The answer remains the same. We will not go by a recommendation that was made 2 years ago when we have a current one. We will go by the most current recommendation.

Id. at 21.

Williams appealed, see id. at 22, and contended that Sellers had failed to "reveal what 'most current recommendation' she [was] . . . relying on." Id. at 22. On November 13, 2013, Genese McCoy, DOC Medical Services Administrator, returned Williams' appeal unanswered for two reasons: Williams had used his "initial for first name," id. at 23, and Williams had failed to submit with his appeal the Offender Grievance Report Form and/or a completed Grievance Response from Reviewing Authority. See id.

First, there is no requirement in, and the defendants have cited no language in, DOC OP-090124 in connection with grievance appeals that obligates an offender to sign his full first name. Second, DOC's grievance policy forbids an offender from submitting any document on appeal except the Misconduct/Grievance Appeal Form to Administrative Review Authority. See Doc. 28-1 at 12, Section VII.B.1.a. ("offender will submit only 'Misconduct/Grievance Appeal Form to Administrative Review Authority); id. at 13, Section B.1.b. See also Doc. 11-2 at 22 (offender is warned "Do Not Attach Any Other Paper").

Because McCoy lacked the authority to reject or return unanswered Williams' appeal on these two grounds, she hindered Williams' efforts to avail himself of DOC's grievance process and caused the "final step of exhaustion [to be] unavailable." Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010). Accordingly, the Court concurs with Magistrate Judge Mitchell that Williams has exhausted all available administrative remedies as to this claim for relief.

9

In the Report and Recommendation, Magistrate Judge Mitchell described Williams' claim regarding prison officials' inaction in connection with participation in Ramadan as one involving "other Muslim inmates." Doc. 37 at 2; e.g., id. at 11, n.6; id. at 23, 24, 28. As Williams stated in his amended complaint, he complained about CCF staff also "allow[ing] non-Muslims to ridicule the Muslim traditions of fasting by serving them meals in the daylight hours . . . ." Doc. 11 at 6.

Even if Magistrate Judge Mitchell's mischaracterized Williams' claim for relief, as Williams has argued, the Court finds after review of the allegations in the amended complaint, which the Court has construed in Williams' favor and accepted as true, that Williams has failed to state a claim for relief under the first amendment and RLUIPA. E.g., Moore v. Atherton, 28 Fed. Appx. 803, 806 (10th Cir. 2001)(Muslim inmate failed to state valid free exercise claim based on allegation that he could not avoid hearing Christian inmates pray, because he had not established that hearing another's prayers "burden[ed] his own exercise of his religious beliefs").

In his Objection, Williams has argued that Magistrate Judge Mitchell also misconstrued his claim under the eighth amendment based upon available clothing. Magistrate Judge Mitchell found that Williams' claim focused on the denial of a personal coat and did not concern the cleanliness of the coats that were provided.

In his amended complaint, Williams alleged that despite his request, he "was denied a personal coat all winter and force[d] to attend outside recreation in freezing temperatures . . . ." Doc. 11 at 15. Williams also stated, however, that inmates "are entitled to clothing that is clean," id., and in his grievance papers, he complained about DOC and CCF's policy of issuing coats that had been worn by other inmates. See Doc. 11-2 at 60 (action

10

requested: "[p]rovide . . . a coat of my own that I don't have to share with another prisoner on a daily basis").

"The [e]ighth [a]mendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008)(citing Farmer v. Brennan, 511 U.S. 825, 832 (1994))(further citation omitted). Exposure to inclement weather without proper clothing may in certain circumstances be actionable. E.g., Skelton v. Bruce, 409 Fed. Appx. 199, 208 (10th Cir. 2010). In this case, however, there are no allegations that an authorized state issued coat was unavailable to Williams; rather, the allegations show that Williams was dissatisfied with the coats that CCF made available. Accordingly, the Court finds that Williams has failed to state a claim under the eighth amendment that entitles him to relief.

Based on the foregoing, the Court

(1) ADOPTS the Report and Recommendation [Doc. 37] filed on January 27, 2015;

(2) GRANTS the Motion to Dismiss [Doc. 29] filed on June 6, 2014, by CCA, Miller, Battles, Fox and Sellers to the extent these defendants have argued that Williams has failed to exhaust his administrative remedies in connection with his retaliation claim and DISMISSES said claim without prejudice;

(3) DENIES the Motion to Dismiss to the extent the defendants have argued that Williams has failed to exhaust his administrative remedies as to his claims grounded on his inability to attend Muslim group worship, his lack of access to a Qu'ran during Ramadan in violation of the equal protection clause, the lack of medical treatment for his broken

fingers, the lack of proper monitoring during his hunger strike and a lack of medical treatment for his wrist and knees;

(4) GRANTS the defendants' Motion to Dismiss to the extent the defendants have argued that Williams has failed to state claims for which relief may be granted[3] and

(a) DISMISSES without prejudice Williams' allegations that prison officials are liable because he lacked access to a Qu'ran during Ramadan (first amendment and RLUIPA);

(b) DISMISSES with prejudice Williams' allegations that prison officials are liable because they failed to prevent participation by certain other inmates in Ramadan; and

(c) DISMISSES with prejudice Williams' allegations that prison officials are liable because they denied him outdoor recreation and a personal coat;

(5) GRANTS the defendants' Motion to Dismiss to the extent the defendants have argued that CCA is entitled to dismissal of Williams' claim based upon the lack of access to a Qu'ran (equal protection clause) and his claim based upon his inability to attend Muslim group worship, but DENIES said motion to extent the defendants have contended that CCA cannot be held liable at this stage of the litigation on Williams' claims involving

---

[3]The individual defendants did not further challenge under Rule 12(b)(6), supra, Williams' claim regarding his lack of access to a Qu'ran during Ramadan (equal protection) or his claim regarding his attendance at Muslim group worship. Likewise, the individual defendants did not further challenge the plausibility of Williams' claims against them regarding lack of medical treatment for his broken fingers, lack of proper monitoring during his hunger strike or lack of medical treatment for his wrist and knees. Accordingly, these claims as well as Williams' state law claims and official capacity claims survive at this stage of the litigation. See Pfeil v. Lampert, 2015 WL 727961 *2 (10th Cir. 2015)(RLUIPA limited to official capacity claims for equitable relief)(cited pursuant to Tenth Cir. R. 32.1).

lack of medical treatment for his broken fingers, lack of proper monitoring during a hunger strike and lack of medical treatment for his wrist and knees; and

(6) RE-REFERS this matter to Magistrate Judge Mitchell for further proceedings.

ENTERED this 19th day of March, 2015.

LEE R. WEST
UNITED STATES DISTRICT JUDGE